IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:04CV549-1-V
3:01CR104-1-V

| | |
|---|---|
| SONIA LORENA BROWN, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | **O R D E R** |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |
| _____) | |

**THIS MATTER** comes before the Court upon Respondent's Motion for Summary Judgment, filed May 20, 2005.

For the reasons set forth below, and in Respondent's Motion for Summary Judgment, this Court grants Respondent's Motion for Summary Judgment and dismisses Petitioner's Motion to Vacate, Set Aside, or Correct Sentence.

## PROCEDURAL HISTORY

On June 4, 2001, Petitioner was indicted for conspiracy to possess with intent to distribute in excess of five kilograms of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b) and 846. On January 24, 2002, Petitioner entered a "straight up" plea at her Rule 11 hearing.

On or about March 7, 2002, Petitioner signed a non-attribution agreement in which she stated that she wished to make a statement to United States Custom Special Agent David Wilhelm and others, in the presence of her attorney, in order to further plea discussions between

her attorney and government counsel. Among other things, the agreement set forth how the information she provided and statements she made to law enforcement agents could be used. On that same day, Petitioner met with Customs Special Agent Ron Taylor, Assistant United States Attorney ("AUSA") Robert Higdon, and her trial counsel, during which time Petitioner purported to provide truthful information as to her involvement in criminal activity. Petitioner's trial counsel left the meeting briefly to attend a matter in state court but later returned.

On March 14, 2002, this Court granted the Government's Motion for Transfer of Custody which permitted in specific circumstances Customs Special Agents Wilhelm and Taylor to take custody of Petitioner so they could further debrief her with respect to the information she had about criminal activity against the United States.

On or about March 20, 2002, AUSA Higdon and Special Agent Taylor met with Petitioner for a second time, this time without counsel, at the Mecklenburg County Jail, and again urged her to cooperate fully. During this meeting Petitioner was emotional but maintained that her prior statement was true. AUSA Higdon then informed Petitioner that he would tell her attorney they were at an impasse.

On March 29, 2002, the United States Probation Office forwarded to the parties the completed presentence report (PSR) in which it calculated a base offense level of 32 but awarded a two-level reduction in offense level based upon the applicability of the safety valve set forth in § 5C1.2 of the Sentencing Guidelines and a three-level reduction in offense level for acceptance of responsibility under § 3E1.1 of the Sentencing Guidelines.

On April 3, 2002, AUSA Higdon wrote to Petitioner's trial counsel and informed her that as a result of other interviews conducted as part of pre-trial preparation, he had "concluded that

[Petitioner] was not completely forthcoming when interviewed" and that "she [had] failed to truthfully disclose all information she may have regarding the sources of the cocaine" and other matters of interest to law enforcement. AUSA Higdon further stated that at that time he would decline to file a 5K1.1 or Rule 35 motion. He then urged Petitioner's counsel to speak with Petitioner and encourage her to provide law enforcement with "the complete truth regarding her activities and the role of others involved in these crimes."

On April 8, 2002, the Government submitted objections to the PSR asserting that Petitioner was not entitled to offense level reductions because Petitioner had failed to provide truthful information concerning her role in the offense of conviction or the role of others who were involved, as required for those reductions. On April 12, 2002, Petitioner filed a response to the Government's objections asserting that she was improperly interviewed by AUSA Higdon and Special Agent Taylor outside the presence of her attorney and that she was harassed and threatened during this interview. With respect to her sentence, Petitioner stated that "the Government [was] being vindictive and unethical in requesting that [Petitioner] not get any departures and reduction in offense levels even though [she had] met all the statutory guidelines for the reductions given in the Presentence report."

On May 10, 2002, the Government filed a Sentencing Brief addressing Petitioner's concerns that she had been improperly interviewed without counsel. In the sentencing brief AUSA Higdon asserted that he and Special Agent Taylor had explained to Petitioner and her counsel following her initial debriefing on March 7, 2002, that additional interviews would be necessary, and that counsel had indicated that she did not need to be present, a response that was not an unusual one for a defense counsel to make. AUSA Higdon also stated in his Sentencing

Brief that following Petitioner's March 7th interview, interviews of other parties were conducted in which he learned that Petitioner had not been truthful in her March 7th interview. As a result, they interviewed Petitioner again. In this second interview, which was conducted without counsel, it became clear after a brief discussion that Petitioner would continue to maintain that her earlier statement was true. Consequently, AUSA Higdon informed Petitioner that there was no point in proceeding. AUSA Higdon acknowledged in his response that he and Special Agent Taylor advised Petitioner that her statement was inconsistent with that of other witnesses and reminded her that if she were truthful the information she provided could not be used against her. During the interview Petitioner made no statement of any value. Consequently, no portion of the brief second meeting would be used against Petitioner. The Government would however demonstrate at sentencing that Petitioner's original statement was incomplete and untrue and therefore she was not entitled to the benefit of the safety valve or a downward adjustment for acceptance of responsibility.

Petitioner filed a response to the Government's brief on June 3, 2002, repeating her earlier allegations concerning the interview without counsel. Petitioner also filed, among other things, a memorandum in support of the PSR and a motion for a downward departure. On June 5, 2002, Petitioner filed a motion to dismiss the indictment based on "outrageous government conduct."

On June 14, 2002, at Petitioner's sentencing hearing, the Court heard arguments concerning the Government's objections and Petitioner's motions. Petitioner argued that she had been improperly interviewed without counsel. After hearing argument and considering the testimony, the Court found that Petitioner's testimony "was inherently not credible" and therefore denied both the safety valve and acceptance of responsibility reductions in offense level. This

Court thereafter denied each of Petitioner's motions, including her motion for a downward departure and her motion to dismiss the indictment. The Court proceeded to sentence Petitioner to 121 months imprisonment to be followed by three years of supervised release.

On June 21, 2002, Petitioner filed a motion to correct her sentence pursuant to Rule 35(c) of the Federal Rules of Civil Procedure in which she continued to assert that she was entitled to the benefit of the safety valve and acceptance of responsibility reductions in offense level. On August 2, 2002, the Court denied Petitioner's Rule 35(c) motion.

Petitioner then filed a notice of appeal on August 10, 2002. On appeal Petitioner argued that the Government had breached its non-attribution agreement with Petitioner and that the district court had erred in denying Petitioner reductions in her offense level based on acceptance of responsibility and the applicability of the safety valve, in its finding of fact, and in denying Petitioner's motion for a downward departure. Petitioner relied heavily on her arguments concerning the second interview conducted outside the presence of counsel, specifically asserting that the government's use of Petitioner's statement obtained without the presence of counsel violated "both [Petitioner's] due process rights as well as her Sixth Amendment Rights to assistance of counsel." (Appellant Br. p. 31).

On October 20, 2003, the United States Court of Appeals for the Fourth Circuit affirmed the district court's judgment. In its decision the Fourth Circuit explicitly acknowledged Petitioner's argument that her right to counsel was violated when she was interviewed without counsel and rejected such argument holding that, at a minimum, the error was harmless as the information she had provided in the second interview had not been used against her. On or about November 12, 2003, the Fourth Circuit issued its mandate affirming Petitioner's conviction and

sentence.

On October 25, 2004, Petitioner filed the instant Motion to Vacate, Set Aside, or Correct Sentence. In her motion to vacate Petitioner asserts that she was improperly questioned by the Government outside the presence of her attorney. Petitioner also alleges that she received ineffective assistance of counsel and that her due process rights were denied.

## ANALYSIS

## PROSECUTORIAL MISCONDUCT

Petitioner alleges that her Fifth and Sixth Amendment rights to counsel were violated when the Government interviewed her without her counsel present.

This Court is precluded from ruling on the issue of whether Petitioner's right to counsel or due process rights were violated by the Government when they interviewed her without her counsel present because the Fourth Circuit has already ruled on this issue.[1] In its decision affirming the district court's judgment, the Fourth Circuit specifically rejected this claim:

> Brown's final claim is that the district court failed to find a violation of her Sixth Amendment right to counsel based on an interview conducted by the Government outside the presence of her counsel. Even if Brown could demonstrate error in the Government's actions, she has demonstrated no prejudice because nothing she said at the second interview was used against her. Absent any perceptible showing of harm, we conclude that error, if any, was harmless beyond a reasonable doubt.

Because the Fourth Circuit has clearly ruled that error stemming from the second interview was harmless, the issue of whether Petitioner's right to counsel and due process rights were violated

---

[1] Indeed, Petitioner concedes in her response to the Government's Motion for Summary Judgment that these issues were raised on direct appeal and ruled on by the Fourth Circuit. (Pet. Resp. p. 3).

by the Government's conduct with regard to the second interview are no longer issues for this Court to decide. See Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir. 1976).[2]

**INEFFECTIVE ASSISTANCE OF COUNSEL**

Petitioner alleges that she received ineffective assistance of counsel because her counsel failed to preserve an investigation into the well-being of Petitioner's state of mind after she was interviewed without her counsel present. Petitioner contends that medical and psychological reports should have been obtained. Petitioner contends that such reports would have explained her demeanor at the sentencing hearing.

Petitioner's contention that she received ineffective assistance of counsel is governed by the holding in Strickland v. Washington, 466 U.S. 668, 687-91 (1984). In Strickland, the Supreme Court held that in order to succeed on an ineffective assistance of counsel claim, a petitioner must establish that counsel's performance was constitutionally defective to the extent it fell below an objective standard of reasonableness, and that he was prejudiced thereby, that is, there is a reasonable probability that but for the error, the outcome would have been different. In making this determination, there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. Id. at 689; Fields v. Attorney General of Md., 956 F.2d 1290, 1297-99 (4th Cir.), cert. denied, 474 U.S. 865 (1995). Petitioner bears the burden of proving Strickland prejudice. Fields, 956 F.2d at 1297. If the petitioner fails to meet this burden, a "reviewing court need not consider the performance prong." Id. at 1290.

Moreover, a petitioner who alleges ineffective assistance of counsel following the entry of

---

[2] If Petitioner's claims were not barred by law of the case, she would be procedurally barred from asserting these claims on collateral review because she could have raised them on direct appeal. See United States v. Frady, 456 U.S. 152, 167-68 (1982).

a guilty plea has an even higher burden to meet. Hill v. Lockhart, 474 U.S. 52, 53-59 (1985). When a petitioner challenges a conviction entered after a guilty plea, in order to establish the requisite prejudice, such a petitioner must show that "there is a reasonable probability that but for counsel's errors he would not have pleaded guilty and would have insisted on going to trial." Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir. ), cert. denied, 488 U.S. 843 (1988).

Petitioner's counsel has submitted an affidavit stating that she never observed any indication that Petitioner was in need of any mental health examination. Likewise, Petitioner's conduct at her Rule 11 and Sentencing hearings, as observed by this Court, did not support a conclusion that she required a mental health examination. Consequently, this Court finds that her counsel was not ineffective for failing to investigate her mental health.

Moreover, at a minimum, Petitioner has failed to bear her burden of establishing that she suffered any prejudice.[3] Petitioner provides no evidence whatsoever to support her assertion that she was prejudiced by her attorney's failure to obtain medical or psychological reports. See Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir. 1992)("a habeas petitioner must come forward with some evidence that the claim might have merit. Unsupported conclusory allegations do not entitle a habeas petitioner to an evidentiary hearing.").

---

[3] To the extent Petitioner is asserting ineffective assistance of counsel for failure to subpoena witnesses to establish her truthfulness, this claim also fails because Petitioner provides no support for her conclusory allegation that such witnesses existed.

**THEREFORE, IT IS HEREBY ORDERED that:**

1. Respondent's Motion for Summary Judgment is **GRANTED**; and

2. Petitioner's Motion to Vacate, Set Aside, or Correct Sentence is **DENIED.**

Signed: February 7, 2006

Richard L. Voorhees
Chief United States District Judge